# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

*ELECTRONICALLY FILED*

| | | |
|---|---|---|
| **MARK W. EURTON, JR. and** | } | |
| **LAUREN E. WHISMAN** | } | |
| | } | |
| **PLAINTIFFS** | } | |
| | } | |
| **v.** | } | **COMPLAINT** |
| | } | |
| **PARKER THOMAS, Individually and** | } | **CASE NO.**   3:22CV-508-GNS |
| **in his Official Capacity as a current or** | } | |
| **former Officer of the Oldham County** | } | |
| **Police Department, Commonwealth of** | } | |
| **Kentucky** | } | |
| **1855 N. Highway 393** | } | |
| **LaGrange, KY 40031** | } | |
| | } | |
| **-AND-** | } | |
| | } | |
| **TYLER COVINGTON, Individually and** | } | |
| **in his Official Capacity as a current or** | } | |
| **former Officer of the Oldham County** | } | |
| **Police Department, Commonwealth of** | } | |
| **Kentucky** | } | |
| **1855 N. Highway 393** | } | |
| **LaGrange, KY 40031** | } | |
| | } | |
| **-AND-** | } | |
| | } | |
| **OLDHAM COUNTY FISCAL COURT** | } | |
| **100 W. Jefferson St.** | } | |
| **LaGrange, KY 40031** | } | |
| | } | |
| **DEFENDANTS** | } | |

*** *** ***

MAY IT PLEASE THE COURT:

Come the Plaintiffs, Mark W. Eurton Jr. (hereinafter "Eurton") and Lauren E. Whisman (hereinafter "Whisman"), by and through the undersigned counsel, and for their Complaint against the Defendants, state as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331.

2. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

### PARTIES

4. Plaintiffs, Mark W. Eurton Jr. ("Eurton") and Lauren Whisman ("Whisman"), are United States Citizens and individuals residing in Oldham County, Kentucky, at all times relevant to the claims stated herein.

5. The Oldham County Fiscal Court is the administrative body that governs Oldham County, Kentucky, a political subdivision of the Commonwealth of Kentucky.

6. The Oldham County Fiscal Court ("County") operates and funds the Oldham County Police Department ("OCPD"), which employs a number of paid police officers and other law enforcement agents who are charged with the obligation of protecting and serving the County's residents and which currently, and at all points relevant to the allegations in this Complaint, employed Defendants Parker Thomas and Tyler Covington as police officers. The County is a "person" subject to suit, claims, and liability under 42 U.S.C. Section 1983, *et seq.*, as amended.

7. At all times mentioned herein the OCPD and/or the County was responsible for the establishment of rules, policies, and procedures, either formally or by custom or practice,

regarding employment, training, supervision and conduct of its police officers, including Defendants Thomas and Covington.

8. At all times relevant herein, Defendants acted under color of state law, and the unauthorized conduct identified herein involved the acts or omissions of state officials or public employees acting in their official capacities or exercising (or purporting to exercise) official or state authority, and further within the course and scope of their employment by Oldham County.

## FACTUAL ALLEGATIONS

9. Defendants, including Thomas and Covington individually and/or in concert with each other, both individually and in their official capacities, committed acts under color of state law which deprived Eurton and Whisman of their rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the Constitution of the United States and/or such other Amendments or Constitutional provisions as may be applicable to the facts alleged herein as well as the above referenced sections of the Kentucky Constitution, or other appropriate or applicable provisions of the Kentucky Constitution, and state law as set forth below, such acts being more specifically stated herein.

10. At all times and for all acts stated herein, Defendants Thomas and Covington acted individually and in their official capacity as law enforcement officers employed by Oldham County.

11. Defendant Oldham County failed to institute or enforce any (or adequate) policies, customs, or practices, or to screen and/or employ qualified persons, or to properly train or supervise its officers and its employees including Thomas and Covington, or investigate

thoroughly and honestly complaints by the public to prevent or remedy conditions such as those set forth herein. Their actions and/or inactions have exhibited a deliberate indifference to the Constitutional rights of the citizens of Oldham County and specifically Eurton and Whisman, as alleged more fully below.

12. On or about February 11, 2022, Defendants Thomas and Covington were dispatched to the address 2500 Stoner Road in LaGrange following a call to police by a family member of Eurton's, who was concerned about Eurton and asked that he be checked on.

13. Defendant Thomas was the initial responder and first to speak to Eurton. As he approached, Thomas had his flashlight pointed at the front door. Eurton was standing at the threshold of his door, on a front porch about three steps off the ground, holding a cigarette. Lauren Whisman, his wife, was just inside the door.

14. Thomas stopped at the bottom of the steps and asked Eurton to confirm his identity, to which Eurton complied. When asked by Thomas what was going on, Eurton explained to the officer that nothing was going on. Thomas informed Eurton that someone called and said Eurton was making threats; they were afraid Eurton was going to hurt himself. Eurton's reply was that he had simply been reaching out to family members to tell them how much he loved them. Thomas reiterates their concern, and Eurton reiterates that he was just calling them to talk.

15. In the middle of this exchange, Whisman received a phone call and answered it as Thomas and Eurton kept talking.

16. Thomas asked Eurton multiple times if he was thinking of hurting himself, to which Eurton responded "Hell no." Thomas responded with "Just making sure."

17. Eurton stood calmly and casually in the same position the entire time. The hand not holding the cigarette was lifted above Eurton's head for most of the encounter as it rested against the door frame, raising his shirt and making the waist of his loose-fitting pants plainly visible. There was no indication whatsoever that Eurton had a weapon.

18. Despite Eurton having answered Thomas's questions, the officers did not leave. Eurton proceeded to explain further that all he's been doing was enjoying his weekend, thinking about his family, and thought he call and let them know.

19. The couple's dog then wandered outside the door and began barking as Defendant Covington appeared on the scene. Whisman came outside and down the porch stairs to get the dog while continuing to speak on the phone. Eurton showed no outward sign of aggression toward Whisman.

20. Thomas, speaking to Whisman, asked if she wanted to come speak with another officer while he and Covington spoke with Eurton. Eurton had by then taken a step back inside the threshold of the house.

21. As Thomas ascended the stairs, going past Whisman, he said, "Hey Mark, I'm just, I'm here …" Eurton reached for the door and began to close it. Eurton's movement was slow but deliberate. Thomas had enough time to react and say, "No, no, we're not doing that. We're going to talk," by the time the door was closed. Thomas was right up to the door when it shut.

22. Whisman was outside the residence at this time, standing on the porch. She was in no immediate danger of harm from Eurton.

23. Without attempting to knock, without attempting to ask Eurton to open the door, and without warning that he would forcibly enter if Eurton did not open the door, Thomas

rammed his body into the door in order to force it open. This action caused significant damage to Plaintiffs' door.

24. Thomas and Covington instantly drew their weapons on Eurton, who was a few feet inside the house. Because Eurton had been walking away from the door, his back was toward the officers.

25. Thomas pointed a Taser at Eurton, while Covington pointed a handgun. Thomas ordered Eurton to show him his hands, and Covington said the same and commanded Eurton to turn around.

26. Eurton immediately complied with the officers' orders and his hands were up above his head within half a second. Eurton then turned around and asked if they are going to shoot him.

27. The officers then asked Eurton to approach them and turn around. Eurton took a couple steps toward the officers, then declined to go further, asking if they had a warrant.

28. While Eurton had remained very calm and measured to this point, the continuing, purposeless, and unconstitutional presence of police officers inside his home, pointing weapons at him and asking him to submit to physical detainment, all while his and Whisman's front door had needlessly sustained substantial damage, quickly drove Eurton into a frustrated rage.

29. Eurton continued to ask whether the officers had a warrant, whether he was being detained, and if not, why the officers would not leave. The officers would not answer; Thomas said again that they just wanted to check on him. Eurton agreed they could check on him but stated, correctly, that he had a right to "do that," i.e. close the door, once he had answered their questions. The officers deliberately disregarded this, and Thomas

again told Eurton to approach and turn around. Thomas had no cause whatsoever to arrest or detain Eurton.

30. Because the officers continued to remain on the property, and even made full entry into the home, Eurton became more and more distressed and was provoked into a tirade.

31. Eventually, Sgt. Jared Ellison from the OCPD arrived at the scene. Eurton, though still upset, continued to stick to his points, telling the officers to leave if they did not have a warrant and were not detaining him.

32. Eurton went back into his bedroom, at which point Ellison asked Thomas whether they had any reason to be in the house, and Thomas responded "No."

33. Once they were back by the road, Thomas explained to Ellison that someone claiming to be Eurton's sister called in with the concern about him; the sister had claimed they were estranged, but that Eurton had called her, said "I love you" and hung up. Thomas then stated that they arrived to find Eurton on the front porch "stumbling all around," which was false.

34. Thomas then explained that Eurton "tried to go inside, put his hands in his pants, and slammed the door shut." Thomas omitted any mention that it had been plainly evident Eurton was unarmed, that Eurton had told officers he was fine, and that Eurton had not "slammed" the door by any definition of the word.

35. Thomas then told Ellison that he had forced the door back open and Eurton "had his hands in his pants." This was also untrue; Eurton's hands were in front of his torso as the door burst open, and were immediately raised over his head when ordered by the officers, who had drawn their weapons on Eurton in his own home.

36. After a pause, Ellison told Thomas to write up a memo of everything that happened; Ellison stated that he "has a feeling that this is going to be a complaint."

37. At some point shortly after the incident, Thomas completed a JC-3 report of the incident. (**Exhibit A** hereto.) Eurton was listed on the report as both victim and perpetrator. Whisman was not listed as a victim.

38. The report blames Eurton for escalating the situation, but omits any mention that Thomas and Covington pulled and pointed weapons at Eurton.

39. On or about February 14, 2022, Eurton spoke with Major Neil Johnson of OCPD, explaining to him the events of February 11.

40. Johnson reviewed the officers' body camera footage from the encounter, and consulted with OCPD Chief of Police Colonel Greg Smith. Johnson then contacted Eurton and advised him that if he submitted an invoice or quote for the damage to the front door, that OCPD would submit it to the Fiscal Court for reimbursement.

41. Johnson thereafter requested memoranda from Thomas, Covington, Ellison, and Officer Kimberly Gunsett, who had also been present on February 11. Based on the memoranda supplied by those officers, Johnson provided his own synopsis and recommendation for submission to Smith. (**Exhibit B** hereto.)

42. Johnson's assessment purports to exonerate the officers of any misconduct, despite his earlier review of the body camera footage and conclusion that what had occurred warranted the county's reimbursement of Plaintiffs' costs to repair the physical damage to their home.

43. Johnson attempted to justify the actions of Thomas and Covington breaking into the Plaintiff's home on the grounds that Whisman was "a potential victim of a domestic

abuse situation." (Ex. B, p. 2.) This rationalization is plainly pretextual, and evidences a failure by the municipality to institute or enforce policies, customs and practices designed to protect the constitutional rights of Oldham County citizens, including Plaintiffs, and therefore its deliberate indifference toward the same.

44. Whisman was outside the home at the time Eurton closed the door. There was no exigent circumstance permitting a warrantless, no-knock, no-consent, forced entry, which caused extensive damage to the front door of the residence.

45. Eurton had calmly answered Thomas's questions about his condition and mental state, and had then chosen to disengage from the conversation. Eurton was visibly unarmed, and had posed no threat to harm himself or anyone else. There was no justification for the Thomas and Covington to assault Eurton by pointing weapons at him in his own home.

46. Once in the home, Eurton repeatedly, over the course of several minutes, asked Thomas and Covington to leave. Despite having no basis for continuing to be present – regardless of whether their initial entry was justifiable – Thomas and Covington refused to leave the residence. When Ellison finally arrived, Thomas admitted to him that the officers had no reason to be in the house.

47. Oldham County SOP 28.02 prohibits officers from making a warrantless entry into a home in a domestic violence situation without probable cause. Despite this, OCPD exonerated Thomas and Covington of misconduct in connection with the events of February 11, 2022.

48. As a result of the improper and unauthorized conduct perpetrated by Defendants, as hereinabove alleged, Plaintiffs sustained serious property damage and suffered, and continue to suffer from, emotional and mental harm.

## COUNT I

42 U.S.C. §1983 CIVIL RIGHTS VIOLATION – UNLAWFUL ENTRY INTO THE
PLAINTIFFS' HOME

49. All above paragraphs of the Complaint are incorporated by reference as if set forth again
in full.

50. The Fourth Amendment to the United States Constitution protects all persons' right to be
secure in their persons, houses, papers, and effects, against unreasonable searches and
seizures. The U.S. Supreme Court reiterated, just last year, that the very core of the
Fourth Amendment guarantee is the right of a man to retreat into his own home and there
be free from unreasonable governmental intrusion. *Caniglia v. Strom*, 141 S.Ct. 1596,
1599 (2021).

51. Defendants, individually or in concert and/or together, committed acts under color of
state law as alleged above, which deprived Eurton and Whisman of their rights, privileges
and immunities secured by the Fourth and Fourteenth Amendments to the United States
Constitution, including but not necessarily limited to the forced, warrantless entry into
their home through their closed front door. Those deprivations of rights included, but
may not be limited to, deliberate indifference to Plaintiffs' right to privacy, their right to
be free from improper search or seizure, and their rights to substantive and procedural
due process among other rights, in violation of 42 U.S.C. § 1983.

52. These violations were the direct and proximate cause of injury to the Plaintiffs, both as to
their persons and their real property.

53. Defendants acted intentionally, maliciously or with reckless disregard or callous
indifference to the rights of Plaintiffs and are liable for punitive damages.

54. Plaintiffs are entitled to recover their attorney fees as to this Count under applicable federal law, including 42 U.S.C. § 1988.

## COUNT II

42 U.S.C. §1983 CIVIL RIGHTS VIOLATION – USE OF EXCESSIVE FORCE

55. All above paragraphs of the Complaint are incorporated by reference as if set forth again in full.

56. The Fourth Amendment to the United States Constitution protects all persons' right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. This includes the right to be free from the use of excessive and unreasonable force by agents of the government acting under color of law.

57. Pointing a gun at an unarmed suspect who is not fleeing or posing a risk to police officers or anyone else is an objectively unreasonable use of force.

58. Defendants, individually or in concert and/or together, committed acts under color of state law as alleged above, which deprived Eurton of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including but not necessarily limited to the brandishing of deadly weapons at Eurton, in Eurton's own home, following their forced, warrantless entry. Those deprivations of rights included, but may not be limited to, deliberate indifference to Plaintiff Eurton's right to privacy, his right to be free from excessive force, and his rights to substantive and procedural due process among other rights, in violation of 42 U.S.C. § 1983.

59. These violations were the direct and proximate cause of injury to Plaintiff Eurton.

60. Defendants acted intentionally, maliciously or with reckless disregard or callous indifference to the rights of Plaintiff Eurton and are liable for punitive damages.

61. Plaintiff Eurton is entitled to recover his attorney fees as to this Count under applicable federal law, including 42 U.S.C. § 1988.

## COUNT III

42 U.S.C. §1983 CIVIL RIGHTS VIOLATION – IMPROPER ARREST/DETAINMENT

62. All above paragraphs of the Complaint are incorporated by reference as if set forth again in full.

63. The Fourth Amendment to the United States Constitution protects all persons' right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. This includes the right to be free, particularly in one's own home, from unreasonable seizure through arrest and/or detainment by agents of the government acting under color of law.

64. Breaking into a person's home, blocking the exit, pointing weapons at him, and ordering him to make submissive physical movements, effectively places the person under arrest, or at a minimum, detains him from freedom of security and movement within his home.

65. Defendants, individually or in concert and/or together, committed acts under color of state law as alleged above, which deprived Eurton of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including but not necessarily limited to remaining in Eurton's home for several minutes after it was established that their continued presence was objectively unreasonable, acting to arrest and/or detain Eurton by blocking exit from the property, pointing a Taser and handgun at him, and ordering him to submit to physical restraint, all without probable cause. Those deprivations of rights included, but may not be limited to, deliberate indifference to Plaintiff Eurton's right to privacy, his right to be free from improper

search or seizure, and his rights to substantive and procedural due process among other rights, in violation of 42 U.S.C. § 1983.

66. These violations were the direct and proximate cause of injury to Plaintiff Eurton.

67. Defendants acted intentionally, maliciously or with reckless disregard or callous indifference to the rights of Plaintiff Eurton and are liable for punitive damages.

68. Plaintiff Eurton is entitled to recover his attorney fees as to this Count under applicable federal law, including 42 U.S.C. § 1988.

**COUNT IV**

ASSAULT

69. All above paragraphs of the Complaint are incorporated by reference as if set forth again in full.

70. Defendants' forced entry into Plaintiff Eurton's home, brandishing of deadly weapons at his person, verbal commands to raise his hands and submit to physical restraint, and refusal to leave the residence despite his lawful requests, caused Plaintiff Eurton to fear imminent physical contact.

71. Defendants willfully and maliciously threatened Plaintiff Eurton with physical contact, and had the present and apparent ability to cause harmful physical contact with Plaintiff Eurton.

72. As a result, Plaintiff Eurton sustained injury in the form of emotional distress, trauma, humiliation, and physical anguish.

73. Plaintiff Eurton is entitled to compensatory and punitive damages for the injury he suffered.

13

## COUNT V

FALSE ARREST/IMPRISONMENT

74. All above paragraphs of the Complaint are incorporated by reference as if set forth again in full.

75. Defendants' forced entry into Plaintiff Eurton's home, brandishing of deadly weapons at his person, verbal commands to raise his hands and submit to physical restraint, and refusal to leave the residence despite his lawful requests, unlawfully confined and detained Plaintiff Eurton.

76. Defendants' actions in falsely arresting and/or detaining Plaintiff were undertaken willfully and maliciously.

77. As a result, Plaintiff Eurton sustained injury in the form of emotional distress, trauma, humiliation, and physical anguish.

78. Plaintiff Eurton is entitled to compensatory and punitive damages for the injury he suffered.

## COUNT VI

INTENTIONAL INFLICTION OF EMOTIONAL DISTRES

79. All above paragraphs of the Complaint are incorporated by reference as if set forth again in full.

80. Defendants' actions set forth herein were undertaken intentionally or recklessly toward Plaintiffs.

81. Defendants' conduct was outrageous, intolerable, and shocking to the conscience.

82. Defendants' conduct was the direct and proximate cause of emotional distress for both Plaintiffs.

83. The resulting emotional distress suffered by Plaintiffs is severe.

84. Plaintiffs are entitled to compensatory and punitive damages for the injury they suffered.

## COUNT VII

TRESPASS TO LAND

85. All above paragraphs of the Complaint are incorporated by reference as if set forth again in full.

86. Defendants willfully and maliciously entered the Plaintiffs' real property without lawful cause or the consent of Plaintiffs.

87. Defendants' entry directly and proximately caused substantial physical damage to the Plaintiffs' real property.

88. Plaintiffs are entitled to compensatory damages for the physical injury sustained by their real property, either the cost to restore it to its prior condition and remedy any other injury resulting from the damaged condition, or the real property's diminution of value.

89. Plaintiffs are entitled to punitive damages for Defendants' intentional, malicious trespass to their real property.

## COUNT VIII

NEGLIGENCE *PER SE*

90. All above paragraphs of the Complaint are incorporated by reference as if set forth again in full.

91. KRS 431.025 prohibits the use of unnecessary force or violence in the making of an arrest, and requires the arresting officer to announce his intention to arrest the arrestee and the charge on which the arrestee is being arrested.

92. Oldham County SOP 28.02 prohibits officers from making a warrantless entry into a home in a domestic violence situation without probable cause.

93. Thomas and Covington violated these statutory and regulatory provisions by their actions as set forth above.

94. Under KRS 446.070, Plaintiffs are entitled to an award of their actual damages caused by violation of Kentucky statutes and regulations.

95. Plaintiffs were directly and proximately harmed by Defendants' violations of the above statutory and regulatory provisions.

96. Plaintiffs are entitled to an award of their actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Mark W. Eurton, Jr., and Lauren E. Whisman, request the following relief from this Honorable Court:

1. Judgment in their favor on all causes of action set forth herein;

2. An award damages for their past, present and future physical, mental and emotional pain, suffering and humiliation;

3. An award of damages resulting from impairment to labor and earn money;

4. An award of damages for the physical injury done to their real property, either in the amount of the cost of full remediation or diminution of value;

5. Additional compensatory damages, in an amount to be proven at trial including but not limited to medical and other consequential expenses incurred;

6. Punitive damages;

7. Reasonable attorney fees pursuant to 42 U.S.C. § 1988 and other law;

8.  All costs herein incurred;

9.  A trial by jury on all issues so triable;

10. Prejudgment and post-judgment interest as provided by law; and,

11. Any and all other relief to which Plaintiff may appear entitled, including leave to amend this Complaint.

Respectfully submitted:

*/s/ Kenneth A. Bohnert*
Kenneth A. Bohnert – kbohnert@cssattorneys.com
Bradley R. Palmer – bpalmer@cssattorneys.com
CONLIFFE, SANDMANN & SULLIVAN, PLLC
325 W. Main St., Suite 250
Louisville, Kentucky  40202
502-587-7711
*Counsel for Plaintiffs*