UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00508-GNS

MARK W. EURTON, JR.; and
LAUREN E. WHISMAN                                                    PLAINTIFFS

v.

PARKER THOMAS;
TYLER COVINGTON; and
OLDHAM COUNTY FISCAL COURT                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Partial Motion to Dismiss (DN 8). The motion is ripe for adjudication. For the outlined reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.      SUMMARY OF THE FACTS

Defendants Parker Thomas ("Thomas") and Tyler Covington ("Covington"), both officers with Oldham County Police Department ("OCPD"), conducted a welfare check on Plaintiff Mark W. Eurton, Jr. ("Eurton"), in February 2022. (Compl. ¶¶ 6, 12, DN 1). At his residence, Eurton was repeatedly asked whether he intended to hurt himself, which he denied. (Compl. ¶¶ 14, 16). Eurton and Thomas spoke for a time before Eurton entered his home and closed the door. (Compl. ¶¶ 18, 20-21). Thomas pursued Eurton, forcibly opened the door, and drew his taser; Covington drew his firearm. (Compl. ¶¶ 21, 23-25). Eurton was then detained. (Compl. ¶¶ 25-35).

Eurton and his wife, Lauren E. Whisman (collectively "Plaintiffs"), initiated this action pursuant to 42 U.S.C. § 1983 and asserted claims against Thomas and Covington, in their individual and official capacities, and Oldham County Fiscal Court ("OCFC") (collectively "Defendants") for civil rights violations and state law claims. (Compl. ¶¶ 6, 49-96). Defendants

move to dismiss the official-capacity claims and intentional infliction of emotion distress claim against Thomas and Covington and all claims against OCFC.  (Defs.' Mot. Dismiss, DN 8). Plaintiffs now abandon their official-capacity claims against Thomas and Covington and state-law claims against OCFC, and Defendants concede that dismissal of the intentional infliction of emotional distress claim would be premature.  (Pls.' Resp. Defs.' Mot. Dismiss 2, DN 9; Defs.' Reply Mot. Dismiss 1-2, DN 10).  Accordingly, the abandoned claims will be dismissed.  *See Bradley v. Jefferson Cnty. Pub. Schs.*, 598 F. Supp. 3d 552, 566-68 (W.D. Ky. 2022).  Therefore, the sole dispute is whether the Section 1983 claims against OCFC are sufficiently pled.

## II.    JURISDICTION

The Court exercises subject-matter jurisdiction over this action based upon federal question jurisdiction and supplemental jurisdiction over the state-law claims.  28 U.S.C. §§ 1331, 1367(a).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true," but it is not required to "accept a 'bare assertion of legal conclusions.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citations omitted).  A pleading offering only labels, formulaic recitations of a claim's elements, or generalized assertions without factual support does not meet this burden.  *Iqbal*, 556 U.S. at 678.  Facts "'merely consistent with' a defendant's liability" or that "do not permit the court to infer more than the mere

2

possibility of misconduct" are inadequate, as it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678-79 (citations omitted).

## IV.   DISCUSSION

"A municipality[1] is a 'person' under 42 U.S.C. § 1983, and so can be held liable for constitutional injuries for which it is responsible" but "only for its own wrongdoing, not the wrongdoings of its employees." *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 565 (6th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015)); *cf. D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (noting that a municipality cannot "be held liable under § 1983 on a *respondeat superior* theory—in other words, '*solely* because it employs a tortfeasor.'" (internal quotation marks omitted) (quoting *Monell*, 436 U.S. at 691)). Thus, liability "attaches only under a narrow set of circumstances . . . ." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citation omitted). A *Monell* claim requires proof that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)); *accord Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[A] plaintiff must . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

---

[1] OCFC satisfies the definition of a municipality. "In Kentucky 'fiscal courts' are local legislative bodies that govern counties . . . [and] are vested with the ability to provide local governmental services among which is the duty to provide for police protection." *Fultz v. Whittaker*, 187 F. Supp. 2d 695, 708 (W.D. Ky. 2001) (internal citations omitted) (citation omitted). Thus, OCPD is a "creation[] of the OCFC and ha[s] no legal existence separate and apart from the OCFC." *Id.* Accordingly, all official-capacity actions against OCPD or Oldham County must be brought against OCFC. *Id.*; *cf. Longwood, LLC v. Voegele*, No. 3:17-CV-00676-TBR, 2018 U.S. Dist. LEXIS 58187, at *15-22 (W.D. Ky. Apr. 5, 2018) (concluding that claims against the Oldham County Engineer's Office were duplicative to those against OCFC considering the two entities "are one in the same . . . .").

To establish municipal liability, a plaintiff "must (1) identify the municipal policy or custom,[2] (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The existence of an illegal policy or custom may be demonstrated through "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

Plaintiffs fail to sufficiently plead facts which, if taken as true, would establish one of the four methods to show an illegal policy or custom on the part of OCFC. In their Complaint, Plaintiffs allege that OCFC "was responsible for the establishment of rules, policies, and procedures, either formally or by custom or practice, regarding employment, training, supervision and conduct of its police officers, including Defendants Thomas and Covington." (Compl. ¶ 7). This includes OCPD Standard Operating Procedure 28.02 which "prohibits officers from making a warrantless entry into a home in a domestic violence situation without probable cause." (Compl. ¶ 47). "Despite this [procedure], OCPD exonerated Thomas and Covington of misconduct in connection with the events" in this action. (Compl. ¶ 47). Plaintiffs do not identify who made the

---

[2] A "policy" is a "decision[] of [a municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403-04 (citing *Monell*, 436 U.S. at 694). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (citing *Monell*, 436 U.S. at 690-91); *see also Doe v. Claiborne Cnty.*, 103 F.3d 495, 507-08 (6th Cir. 1996) ("A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law' . . . [and] must reflect a course of action deliberately chosen from among various alternatives." (citations omitted)).

final determination as to any potential misconduct.  Ultimately, Plaintiffs contend that OCFC "failed to institute or enforce any (or adequate) policies, customs, or practices, or to screen and/or employ qualified persons, or to properly train or supervise its officers and its employees including Thomas and Covington, or investigate thoroughly and honestly complaints by the public to prevent or remedy conditions . . . ."  (Compl. ¶ 11).  Thus, Plaintiffs have not alleged that any policy or legislative enactment was illegal.

Plaintiffs have not specifically identified an official with final decision-making authority who ratified the actions of Thomas and Covington.  This ratification method requires a plaintiff to allege (1) that "an individual with policymaking authority issue[d] a final decision affirming a subordinate's decision on the merits or otherwise . . . thereby adopting it as municipal policy," or (2) that "a policymaker fail[ed] to meaningfully investigate the [unconstitutional] acts of a subordinate."  *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 729 (S.D. Ohio 2018) (citations omitted); *see Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 537-38 (W.D. Ky. 2020) ("An official acting with final decision-making authority may ratify the unconstitutional acts of its employees in two ways.").  In both circumstances, this requires specificity as to the identity of the individual policymaker.

Plaintiffs do not identify any specific policymaker who allegedly ratified Thomas' and Covington's conduct.  Rather, Plaintiffs plainly allege that "OCPD exonerated Thomas and Covington of misconduct . . . ."  (Compl. ¶ 47).  This generalized claim is inadequate to properly plead such a claim.  *See Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (rejecting the argument that the entire police department ratified the officers' conduct when a final decisionmaker was not named and concluding that this lack of identification was "insufficient to establish the requisite degree of culpability.").

Third, Plaintiffs have not plausibly alleged a policy of inadequate training or supervision. Municipalities may be liable for failure-to-train claims,[3] but "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985)); *see Tuttle*, 471 U.S. at 822 ("[T]he 'policy' [of failing to train] . . . is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). "[A] plaintiff 'must establish that:  1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury.'" *Jackson*, 925 F.3d at 834 (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989); *cf. Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700-01 (6th Cir. 2006) (noting the two situations which may establish deliberate indifference for failure to train claims:  (1) "[failing] to provide adequate training in light of foreseeable consequences that could result from a lack of instruction"; and (2) "[failing] to act in response to repeated complaints of constitutional violations by its officers."  (internal quotation marks omitted) (citations omitted)).  The focus "must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *Harris*, 489 U.S. at 390.[4]

---

[3] "[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (footnote omitted).

[4] Though a singular officer may be unsatisfactorily trained, this alone does not establish a policy to establish municipal liability. *Harris*, 489 U.S. at 390-91 (citing *Springfield v. Kibbe*, 480 U.S. 257, 268 (1987) (O'Connor, J., dissenting); *Tuttle*, 471 U.S. at 821).  Moreover, it is insufficient "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,]" as this may extend to every law enforcement encounter with injury but does "not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which

Plaintiffs have not pled any facts regarding OCFC's alleged failure to properly train Thomas, Covington, or other officers at OCPD, nor have they pled any facts to connect the purported lack of training to the alleged constitutional injuries.  Instead, Plaintiff assert a "bare assertion of legal conclusion[]" regarding OCFC's purported failure, which this Court is not required to accept.  *Tackett*, 561 F.3d at 488.

Finally, Plaintiffs have not plausibly alleged a custom of tolerance or acquiescence to federal civil rights violations.  Such a custom "is unwritten but nevertheless entrenched," and a plaintiff must allege:  (1) the existence of "a clear and persistent pattern" of illegal activity; (2) actual or constructive notice to the municipality; (3) municipal approval of the unconstitutional conduct, "such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction;" and (4) the custom was the "moving force" to the constitutional violation.  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Doe*, 103 F.3d at 508); *see Howse v. Hodous*, 953 F.3d 402, 411 (6th Cir. 2020).  "[D]eliberate indifference 'does not mean a collection of sloppy, or even reckless oversights; it means evidence showing an obvious, deliberate indifference' to the alleged violation."  *Thomas*, 398 F.3d at 433 (quoting *Doe*, 103 F.3d at 508; *Brown*, 520 U.S. at 407).  "[T]he plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference" condoning constitutional violations.  *Id.. But cf. Griffith v. Franklin Cnty.*, 975 F.3d 554, 583 (6th Cir. 2020) (noting municipal liability may apply for "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  (quoting *Plinton v. Cnty.*

---

they must deal."  *Id.* at 391.  "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  *Id.*

*of Summit*, 540 F.3d 459, 464 (6th Cir. 2008))).  "Mere blanket assertions that [the municipality] 'tolerated' or 'condoned' officer misconduct aren't enough."  *Howse*, 953 F.3d at 411 (citing *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)).

Plaintiffs have not plausibly alleged any facts showing a patterned history of illegal activities, that OCFC had actual or constructive notice of this purported history, or that OCFC approved of such conduct.  Moreover, Plaintiffs have not alleged any recurring problematic situations which OCFC failed to address.  *See Griffith*, 975 F.3d at 583.  Plaintiffs again provide only a blanket "bare assertion of legal conclusion[]" regarding OCFC's tolerance or acquiescence, which this Court is not required to accept.  *Howse*, 953 F.3d at 411; *Tackett*, 561 F.3d at 488.

Plaintiffs have not plausibly alleged any of the four methods to demonstrate the existence of an illegal policy or custom to bring a *Monell* claim against OCFC.  *See Burgess*, 735 F.3d at 478.  Accordingly, the Court's analysis need not proceed to the remaining showings, and Defendants' motion must be granted to the extent that the claims against OCFC be dismissed.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss (DN 8) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' claims against Defendants Thomas and Covington in their official capacities and all claims against Defendant Oldham County Fiscal Court are **DISMISSED**.  Defendant Oldham County Fiscal Court shall be dismissed from this action.

Greg N. Stivers, Chief Judge
United States District Court

May 23, 2023

cc:     counsel of record

8